OAR et ux. v. DAVIS et al.†

(Court of Civil Appeals of Texas. Feb. 25, 1911. On Motion for Rehearing, March 18, 1911.)

1. APPEAL AND ERROR (§ 837*) — REVIEW — MATTERS CONSIDERED.

In determining whether overruling a demurrer to an amended petition was error, a supplemental petition and a trial amendment can be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3278; Dec. Dig. § 837.*]

2. CANCELLATION OF INSTRUMENTS (§ 37*)—FRAUD—PLEADING—SUFFIENCY.

A petition to partially cancel a conveyance to plaintiffs' stepfather stated a good cause of action, and was not insufficient as failing to show any fraud preventing plaintiffs from reading the deeds, where it alleged that plaintiffs having special confidence in defendant, depended upon him to have the deeds prepared, and relying on his assurance that they were prepared according to a contract whereby they agreed to sell certain land to him, signed and acknowledged the deeds without reading them; that defendant fraudulently had the land in controversy included in the deeds; that there was no consideration for the deeds as to such land; that the officer taking the acknowledgments was employed by defendant and did not explain the deeds to plaintiffs, etc.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–81; Dec. Dig. § 37.*]

3. DEEDS (§ 68*)—VALIDITY—ASSENT OF PARTIES.

Ordinarily a deed cannot be rescinded solely because the parties' minds never met, but plaintiff must be reasonably free from negligence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 149–155; Dec. Dig. § 68.*]

4. ACKNOWLEDGMENT (§ 56*)—CERTIFICATE—CONCLUSIVENESS.

To impeach facts stated in an acknowledging officer's certificate, it is not essential that fraud on his part or collusion between him and the person perpetrating the fraud be alleged.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 301, 302, 315; Dec. Dig. § 56.*]

5. CANCELLATION OF INSTRUMENTS (§ 42*)—AMENDMENT—CANCELLATION OF DEEDS.

In a suit to partially cancel a conveyance of land to plaintiffs' stepfather on the ground that it was obtained through his fraud, it was not error to permit plaintiff to set up a supplemental petition and trial amendment, alleging that the officer who took the acknowledgments was employed by defendant; that he did not fully explain the deed nor inform plaintiffs that the deeds covered the land involved; that the certificates of acknowledgment were false so far as they stated or implied that plaintiffs were so informed; that such failure constituted fraud, especially as to the plaintiffs who were married women; that defendant knew plaintiffs were not so informed, etc.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 91–95; Dec. Dig. § 42.*]

6. CANCELLATION OF INSTRUMENTS (§ 24*)—CONDITIONS PRECEDENT — TENDER — NECESSITY.

In a suit to partially cancel a conveyance to plaintiffs' stepfather on the ground of his fraud, it was not necessary for plaintiffs to offer to refund any part of the money received; that being the price of the remaining land.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 33–38; Dec. Dig § 24;* Deeds, Cent. Dig. § 212.]

7. HUSBAND AND WIFE (§ 275*)—COMMUNITY—IMPROVEMENTS — COMPENSATION — RIGHT TO.

A second community cannot acquire an interest in land of which the wife is a tenant for life as survivor of the first community, or create a charge against it by placing improvements thereon.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1025; Dec. Dig. § 275.*]

8. DEEDS (§ 211*)—FRAUD IN PROCUREMENT—EVIDENCE—SUFFICIENCY.

Evidence held to sustain a finding that defendant procured through fraud a deed from his stepchildren covering more land than they had agreed or intended to convey.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 641–646; Dec. Dig. § 211.*]

9. TRIAL (§ 256*)—INSTRUCTIONS—SUBMITTING MATTERS CONJUNCTIVELY..

A charge submitting matters of defense conjunctively is not affirmatively erroneous; the defect being one of omission which should be corrected by a request for instructions submitting the matters disjunctively.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

10. TRIAL (§ 260*) — INSTRUCTIONS — MATTER COVERED.

An instruction, in an action to partly cancel a conveyance, that, though plaintiffs did not know that the land involved was included in the deeds, if their lack of understanding arose from failure to use ordinary care, they could not recover, was properly refused as having been sufficiently covered by an instruction that, if plaintiffs signed the deeds without reading them and in so doing failed to use the degree of care that an ordinarily prudent person would have used, they were negligent and could not recover.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

On Motion for Rehearing.

11. APPEAL AND ERROR (§ 172*)—REVIEW—OBJECTIONS NOT RAISED BELOW.

An objection that a judgment appealed from ordering partition is erroneous as divest-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

ing one of the appellants of an interest cannot be considered where her right to an interest was not put in issue or passed upon below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1070–1078; Dec. Dig. § 172.*]

Appeal from District Court, Hunt County; C. L. Elder, Special Judge.

Action by Myrtie Davis and others against R. V. Oar and wife. Judgment for plaintiffs, and defendants appeal. Affirmed.

Yates & Starnes, for appellants. Sherrill, Mulkey & Hamilton, for appellees.

TALBOT, J. This suit was filed originally by J. C. Davis, and Myrtie and Ella Davis, joined by their husbands, Lee and J. F. Davis, against R. V. Oar and wife, M. A. Oar, to cancel so much of three certain deeds as contained a description of 100 acres of land of the Donnelly survey in Hunt county; said deeds having been executed by the plaintiffs to the defendant R. V. Oar. J. F. Davis, the husband of Ella Davis, having died after suit was filed, his death was suggested and suit prosecuted by J. C. Davis, Ella Davis, and Myrtie Davis and husband, Lee Davis. Earl Davis, a minor, by his next friend, J. C. Davis, intervened, claiming an undivided one-fourth interest in the land in controversy and adopted the pleadings of the plaintiffs.

The petition of the plaintiffs alleged, in substance, and the evidence and verdict of the jury are sufficient to establish, the following facts: The plaintiffs J. C. Davis, Ella Davis, Myrtie Davis, and Earl Davis are the only children of the defendant Mrs. M. A. Oar by a former husband, J. A. Davis, deceased. The 100-acre tract of land in controversy was the separate property of J. A. Davis at the date of his death, and the three other tracts described in the deeds referred to in plaintiffs' petition were the community property of himself and his surviving wife, Mrs. M. A. Davis, now Mrs. M. A. Oar. At the date of said deeds the plaintiffs and intervener owned by inheritance from their father, subject to the life estate of one-third interest of their mother, Mrs. Oar, the 100 acres of land in controversy, and an undivided one-eighth interest each in the other tracts of land described in said deeds. Some time prior to the 26th day of November, 1904, the defendant R. V. Oar proposed to buy the respective interests of the plaintiffs in said three tracts of land, and after some negotiations it was agreed that plaintiffs would sell to said Oar, who was their stepfather, their respective interests therein at and for the consideration of $550 each, aggregating $1,650. They did not agree to sell the defendant Oar any part of their interest in the 100 acres of land in controversy, and it was understood by all the parties that said 100 acres, which was known as the home place, was not to be conveyed. Defendant

R. V. Oar agreed to have deeds drawn in accordance with the trade, and, he being the stepfather of the plaintiffs and having raised them from the time they were small children, they had confidence in him as a child has in a parent, and they trusted and relied upon him implicitly to have the deeds drawn in accordance with the contract. The defendant R. V. Oar, however, took advantage of the confidence which the plaintiffs reposed in him, and for the purpose of cheating and defrauding the plaintiffs out of the land in controversy caused the description of said land to be incorporated in the deeds, and procured a notary to take the acknowledgments, and said notary did not fully explain the same to the plaintiffs, or to any of them, nor did he read any part of any of the deeds to any of the plaintiffs, or tell them the land in controversy was included therein, and the plaintiffs did not know that said land, or any part thereof, was described in said deeds. With knowledge of all these facts defendant R. V. Oar accepted said deeds and had them recorded.

The plaintiffs under the circumstances were not guilty of negligence in signing and acknowledging said deeds without reading them. Defendant R. V. Oar did not pay any consideration whatever for the land in controversy, but only paid the amount which he had agreed to pay for the three tracts of land which he had contracted to buy. These three tracts were well worth the amount of $1,650 paid by the said Oar, but said amount was grossly inadequate as a consideration for all the land described in said deeds. The deeds were made on the 26th day of November, 1904, and the plaintiffs did not discover that the land in controversy was included in said deeds until in the spring of 1908, when they learned through their mother, the defendant M. A. Oar, that defendant R. V. Oar was claiming the land in his own right, and about the 1st of May of the same year they went to the county clerk's office in the city of Greenville and examined the records of the deeds, and found that the 100-acre tract in controversy was included in said deeds, whereupon they at once employed counsel and brought this suit. The incorporation of the description of the land in controversy in the deeds was not the result of mutual mistake, and was not inserted in good faith by the defendant, but was done with a fraudulent intent for the purpose of cheating and defrauding plaintiffs out of the land. Defendants occupied the land in controversy by reason of the homestead right of the mother of plaintiffs until about the 6th day of January, 1906, when they abandoned the same as a home and acquired another homestead, to wit, a house and lot in Cumby, Tex., which was the community property of the defendants, and where they lived at the time of the trial. Plaintiffs prayed that the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

deeds described in their petition, "in so far as they attempt to convey the interests of plaintiffs in the said 100 acres of the Donnelly survey, be canceled and held for naught, and that plaintiffs have judgment against both defendants for their one-fourth interest each in said land, and that the same be partitioned."

Defendants answered by general and special demurrers, general denial, plea of homestead, and a community interest in said land to the extent of improvements placed thereon since their marriage. Defendants further specially answered that all of the plaintiffs executed said deeds knowing that the same contained a description of the land sued for; that they acknowledged said deeds before a notary public, and that Ella and Myrtie Davis were married women, and that such officer fully explained said deeds to them as required by law; that they all read or heard such deeds read, and that they are estopped from claiming said land, or any part thereof.

The trial court overruled defendants' demurrers; sustained plaintiffs' demurrer to so much of the defendants' answer as set up a community interest in the land to the extent of improvements made thereon by them; instructed a verdict in favor of the intervener for an undivided one-fourth interest in the land in controversy, and submitted the case upon the issues between the plaintiffs and defendants to the jury. The jury returned a verdict in favor of the plaintiffs, upon which judgment was entered, and the defendants appealed. No complaint is made of the judgment in favor of Earl Davis. He was a minor and did not sign the deeds.

The first assignment of error asserts that the court erred in overruling defendants' general demurrer to plaintiffs' second amended petition (1) because they say, in substance, that said petition shows that plaintiffs signed, acknowledged, and delivered deeds conveying the land in controversy to the defendants, and if they did not know that said deeds contained a description of said land such lack of knowledge was the result of their own negligence; (2) that if a party to a deed can read it and does not do it, the same is good and unavoidable, although said deed be contrary to his mind; (3) that said petition "failing to show any device or fraud practiced by any one to prevent the plaintiffs reading the deeds in question, said deeds are good and unavoidable." We are of the opinion the court did not err in overruling the demurrer. The petition alleged, in effect, among other things, that the relation of parent and child existed between the defendants and each of the plaintiffs, the special confidence and trust the children had in the parent, and that by reason of that confidence and trust they depended entirely upon the defendant Oar to have the deeds prepared, and, relying on his assurance that they were prepared in accordance with the contract, signed and acknowledged them without reading them or requiring them to be read to them.

The petition further alleged that the defendant Oar, in the preparation of the deeds, well knowing that he had not contracted to buy the same, fraudulently and with the intent to cheat and defraud plaintiffs had said deeds so prepared as to include the one-fourth interest of each of the plaintiffs in the land in controversy; that said deeds, so far as the land in controversy is concerned, were entirely without consideration, and if plaintiffs had known that said deeds contained a description of their interest in said land they would not have signed or executed the same. In a supplemental petition and a trial amendment filed by the plaintiffs, which may be looked to in determining whether there was any material error in the ruling of the court under consideration, the plaintiffs alleged that the officer who took their acknowledgments to the deeds purporting to convey their interest in the land in controversy was employed by the defendant R. V. Oar to take said acknowledgments, and that said officer did not fully explain the said deeds, or any of them, to any of the plaintiffs, nor did he inform the plaintiffs, or either of them, that said deeds, or either of said deeds, contained a description of the land in controversy or a description of any interest in said land; that the defendant R. V. Oar, in procuring said acknowledgments and in accepting and recording said deeds, knew that plaintiffs were not informed that said deeds contained a description of plaintiffs' respective interests in the 100 acres of land in controversy, and of the failure of said officer to fully explain the said deeds, and was therein guilty of perpetrating a fraud upon the plaintiffs.

We think the plaintiffs' pleadings, taken as a whole, set out sufficient cause for the cancellation of the deeds as prayed for, and that defendants' demurrer was properly overruled. It is true that ordinarily the rescission of a deed cannot be had on the ground alone that the minds of the parties never met; that a party seeking such relief must be reasonably free from negligence; that in some cases it has been held that when a party executes a deed without reading it, or, if he cannot read, fails to ask that it be read to him, he cannot obtain relief. But such is not the case made by appellees' pleadings, and this rule does not apply. In addition to the allegations of the purpose and intent on the part of the defendant R. V. Oar to wrongfully and fraudulently acquire the respective interests of the plaintiffs in the land in controversy by having the same included, without the knowledge of the plaintiffs, in the deeds executed by plaintiffs to him, as such purpose and intent is evidenced by the other alleged facts in the petition to which we have adverted, such a family relationship between the parties is alleged, and such trust and confidence upon

the part of the appellees in the defendant R. V. Oar, and such absolute reliance upon him, because of such relationship,· to have said deeds prepared in accordance with the contract, as justified plaintiffs in assuming that the same had been done, and to render applicable the rule which authorizes the setting aside of agreements and transactions where the party benefited stood in such relationship and betrayed the confidence reposed in him by the other party.

The second, third, fourth, and fifth assignments charge that the district court erred in overruling the defendants' general and special exceptions to plaintiffs' trial amendment · and first supplemental petition. The allegations in those pleadings at which the exceptions were leveled are in substance that the officer who took the acknowledgments of plaintiffs to the deeds in question was employed by the defendant R. V. 'Oar; that said officer did not fully explain said deeds, or any part of them, and did not read the same to· plaintiffs, or to any of them, and did not inform plaintiffs, or any of them, that said deeds contained a description of or purported to convey any interest in the 100 acres of land in controversy; that the certificates of said officer attached to the deeds are false, in so far as they state or imply that the plaintiffs were informed that the deeds, or any of them, contained a description ' of any interest in said land, and that the failure of said officer to fully explain said deeds, etc., constituted a fraud and imposition upon the plaintiffs, and especially those that were married women; that the defendant R. V. Oar, in procuring said acknowledgments and in accepting and recording said deeds, well knew that plaintiffs were not informed that said-deeds contained a description of plaintiffs' respective interests in the land in controversy and of the failure of said officer to fully explain said deeds, and was therein guilty of and perpetrated a fraud upon the plaintiffs; that if the defendant R. V. Oar did not know of the failure of said officer to explain to the plaintiffs the full contents of said deeds, said defendant did know· that the description of plaintiffs' respective interests in said 100 acres of land in controversy was fraudulently placed in said deeds by him (the defendant) or under his direction, and that he is estopped from relying upon the certificate of acknowledgment of said · officer by reason of his own fraud.

The propositions, in substance, contended for ·by the appellants under these assignments· are that "the certificate of acknowledgment of the officer to a deed conveying the separate property in lands of a married woman is conclusive of the facts stated in such certificate and cannot be contradicted without allegation of fraud in the procurement of such certificate; that the allegation that the vendee had other lands besides those enumerated in the contract of sale em-

braced in the deed before signature and acknowledgment, and a traverse or denial of the truthfulness of the facts stated in the officer's certificate of acknowledgment to the deed of a married woman, is not an allegation of•fraud in the procurement of the officer's certificate, and in the absence of an allegation of fraud on the part of the officer taking the certificate, or collusion with the vendee, such certificate cannot be impeached."

The trial amendment and the paragraph of the supplemental petition excepted to, taken in connection with plaintiffs' second amended petition, stated a good cause of action and there was no error in overruling defendants' exceptions thereto. It is unquestionably true that it has been held by decisions of this and other states of the Union that, to impeach the veracity of the certificate of the officer · taking an acknowledgment of the execution of a deed by a married woman, it will not be sufficient to merely allege that there was no privy examination, or that the officer failed to fully explain the instrument; that there must be some act alleged showing fraud. Hartley v. Frosh, 6 Tex. 208, 55 Am. Dec. 772; Brand v. Colorado Salt Co., 30 Tex. Civ. App. 458, 70 S. W. 578.

The case at bar is distinguishable in the facts alleged from the cases cited, and like cases. Here the pleadings of the plaintiffs alleged such acts or conduct on the part of the defendant R. V. Oar, especially in view of the alleged family relationship between the parties, the trust and confidence reposed in the said Oar to have the deeds prepared in accordance with the contract, and the said Oar's betrayal thereof, as constituted a fraud and imposition upon the plaintiffs. Under the·allegations of the plaintiffs' petitions the trial court could not say, as a matter of law, that the certificates of acknowledgment were conclusive of the facts stated in them; therefore said allegations were sufficient, we think, to authorize an inquiry into their verity.

It is not essential to authorize an attack upon such a certificate, that fraud on the part of the notary or fraudulent collusion between the notary and person perpetrating the fraud be alleged. None of the authorities, so far as we are advised, "hold that a party who perpetrates a fraud in the acquisition of land can himself take advantage of his own wrong, and get behind the notary's certificate for protection." It would certainly be a strange doctrine, and a rule destructive of the right to detect and punish fraud, to hold that one who has fraudulently acquired a deed to land from a married woman may defeat the cancellation of such deed on the ground that the certificate of the officer taking the acknowledgment of the grantor is conclusive of the facts stated in said certificate. because the officer was not a party to the fraud. In the case of Freiberg v. De Lamar, 27 S. W. 151, the rule announc-

ed in Hartley v. Frosh, supra, is recognized, but it is said: "The application of the rule is not dependent upon the question whether or not the beneficiary is technically an innocent purchaser. That question becomes important when fraud or undue influence upon the wife is established. Where this has been done, one who has paid no consideration or participated in or had notice of the wrong cannot escape its consequences upon the conveyance."

The argument of appellant that the legal effect of the plaintiffs' pleadings is to annul the deeds of the plaintiffs and strip the defendants of the title vested in them by said deeds to all the lands described therein, without requiring plaintiffs to restore the consideration they have received, is not sound. There is no question of accident or mistake raised by the pleadings of either party to the suit, and plaintiffs' action is to recover only the 100-acre tract, which they allege was procured from them by fraud, and for which they had received no consideration whatever. This being the case made by plaintiffs' pleading, they were not required to offer to refund any part of the consideration received for the other lands; and the effect of the jury's findings and the judgment of the court is simply to cancel the deeds as to the land in controversy and reinvesting the title to the same in plaintiffs, leaving the title to the other tracts described in said deeds in the defendants.

Nor do we think the court erred in sustaining the plaintiffs' special exception to the defendants' trial amendment. The allegations stricken out by the action of the court in sustaining this exception of the plaintiffs were to the effect that defendants, while occupying the land in controversy as their homestead, made certain improvements thereon of the aggregate value of $1,250 by reason of which they alleged that, besides the life estate of the defendant Mrs. M. A. Oar, they owned a community interest in said premises to the extent of the value of said improvements. Appellants cited no authority in support of this claim, and we are inclined to think none can be found. We concur in the view expressed by counsel for appellees upon this question. The wife, occupying the homestead on the separate land of her deceased husband, occupies the position of a tenant for life, and the second husband occupies only by curtesy of the marriage. The community of this second marriage cannot acquire an interest in the land or create a charge against the same by placing improvements thereon. Even if it could be held in any case that the surviving widow occupying such homestead with her children, and expending money for improvements for their benefit, is entitled to reimbursement, no such question is presented in this case. Neither the pleadings nor evidence offered pretend to show when the improvements were made, nor how much of the amount expended was for the benefit of the children.

The eighth assignment complains of the court's refusal to instruct the jury, at the request of the defendants, to return a verdict in their favor. There was no error in this action of the court. The evidence was sufficient to sustain the material allegations of the plaintiffs' petition, and the peremptory instruction was properly refused. A very significant circumstance, among others, in support of the charges that the purpose of the defendant R. V. Oar was to conceal from the plaintiffs the fact that he had caused the land in controversy to be included in the deeds and executed and delivered by the plaintiffs to him, and to fraudulently acquire the title of the same, is disclosed by the testimony of the plaintiffs J. C. Davis and Lee Davis. Both of these witnesses testified, in effect, that as the said J. C. Davis was about to read one of the first set of deeds prepared by the defendant Oar, or caused to be prepared by him, conveying the land in controversy, before either of said deeds was signed by any of the plaintiffs, the said Oar interfered, took the deed from the said J. C. Davis, and said, "What do you want to read that for? I wouldn't beat you out of anything that your father had killed himself to make for you." These plaintiffs further testified, in substance, that the said Oar had always been accustomed to correct them just as a father would his own children, and that they always obeyed him; that when he said what he did about the reading of the deed they took him at his word, believed what he said, and did not read either of the deeds; that they relied upon his truthfulness and integrity, and believed he was telling the truth.

The tenth assignment complains of the following portion of the fifth paragraph of the court's charge, namely: "Or, if you believe that the notary public, who took the acknowledgments of Ella Davis and Myrtie Davis, explained said deeds fully to them, and that they knew at the time of the execution of the same that the 100 acres in controversy was embraced therein, you will find for the defendants." This charge is objected to on the ground that it required the jury to find both that the notary explained said deeds to the plaintiffs Ella and Myrtie Davis, and that they knew that same contained the 100 acres in controversy, before they were justified in finding in favor of the defendants; whereas, if the notary fully explained said deeds to them as required by law, they were estopped from claiming any of said land mentioned in said deeds, regardless of whether or not they knew at the time of the execution of said deeds that the 100 acres in controversy was embraced therein. The objection to the charge is not well taken. A charge submitting matters of defense conjunctively is not affirmatively erroneous; the defect is one of omission, which should be

corrected by a request for instructions submitting the matters disjunctively. No such charge was asked by appellants, and there is nothing in the record indicating that the jury was misled by the charge as given. The assignment will therefore be overruled. Railway Co. v. Hill, 95 Tex. 629, 69 S. W. 136; Railway Co. v. Brown, 78 Tex. 402, 14 S. W. 1034; Railway Co. v. Wood, 69 Tex. 679, 7 S. W. 372; Crowder v. Railway Co., 39 Tex. Civ. App. 314, 87 S. W. 166.

Appellants complain that the court erred in refusing to give the following special charge: "Although you may believe that the plaintiffs Myrtie, Ella, J. C., and Lee, Davis, did not know that the 100 acres in controversy was included in the deed executed by them, conveying such land, if said plaintiffs' lack of understanding arose from their failure to use ordinary care, they cannot recover." There was no error in refusing this charge, because the same was sufficiently covered by special charge No. 9 given at appellants' request, which reads thus: "If you believe from the evidence that the plaintiffs J. C., Myrtie, Ella, and Lee, Davis signed the deeds conveying the land in controversy, without reading the same or having the same read to them, and if you believe that in so doing, if they did, they failed to use that degree of care that an ordinarily prudent person would have used under the same or similar circumstances, such failure would constitute negligence, and the plaintiffs cannot recover."

The evidence was amply sufficient to authorize the jury to find that the defendants had abandoned their homestead right in the premises in controversy, and it was clearly proper to submit that issue to the jury, as it was done in the court's charge complained of in appellants' fifteenth assignment of error, and to refuse the special charges requested by appellants upon that subject, the refusal of which is made the basis of appellants' sixteenth and seventeenth assignments.

There are other assignments, but they need not be discussed. They have either been disposed of against the appellants by what has already been said, or point out no reversible error.

The judgment of the court below is affirmed.

### On Motion for Rehearing.

In appellants' motion for a rehearing, immediately following their eighteenth assignment of error copied therein, they say: "The court erred in affirming the judgment ordering partition of the land in controversy between the plaintiffs and intervener, because the judgment divests defendant, Mrs. M. A. Oar, of her one-third life estate in said land." This is the first time this question has been raised. Mrs. M. A. Oar was a party to the suit, and her right, if she had any, to a one-third life estate in the land recovered by the plaintiffs, and ordered partitioned without any notice being taken of any such right, was not made an issue in the court below, and no question raised about it in appellants' motion for a new trial, or in their assignments of error, or briefs filed in this court. Not having pleaded this matter, or in any way invoked the aid or action of the court below to protect the interest of Mrs. Oar in a life estate of one-third of the land, appellants cannot be heard to complain for the first time in the manner attempted here. Had an issue been made in the trial court as to whether or not Mrs. Oar was entitled to have set apart to her for and during her life one-third of the land in controversy, in the event the plaintiffs should recover, it might have been shown, if such was the fact, that Mrs. Oar had, by deed or otherwise, parted with her life estate in said land. It is the province of an appellate court, ordinarily, to decide only those questions which were passed upon by or presented to the court below, and which are properly presented in such court for review.

The other questions presented in the motion for rehearing were carefully considered before the original opinion was written, and we see no good reason to change the views therein expressed in relation thereto.

The motion for rehearing is therefore overruled.